MASCITELLI v. UNION CARBIDE CO.

DEATH—RIGHT OF ACTION—BENEFICIARIES—NONRESIDENT ALIENS.
Under section 10427, 3 Comp. Laws, creating a liability for
wrongful death, and section 10428, providing for bringing
suit and a distribution of the amount recovered to the dece-
dent's heirs, the language being broad and comprehensive,
and making no exception on the ground of residence or citi-
zenship, damages may be recovered in behalf of the widow
and children of the deceased though they are nonresident
aliens.

Error to Chippewa; Steere, J.   Submitted January 17,
1908.   (Docket No. 42.)   Decided March 31, 1908.

Case by Pasquell Mascitelli, administrator of the estate
of Petri Alphonsi, deceased, against the Union Carbide
Company for the negligent killing of plaintiff's intestate.
There was judgment for plaintiff, and defendant brings
error.   Affirmed.

*Fred L. Vandeveer* (*Oren, Webster & Carleton*, of
counsel), for appellant.

*M. M. Larmonth*, for appellee.

GRANT, C. J.   Plaintiff's decedent, Petri Alphonsi,
was killed by the same explosion as that in *Charron* v.
*Union Carbide Co.*, ante, 687.   Alphonsi was a labor-
er, and the decision in the *Charron Case* establishes the
liability of the defendant in this.

Alphonsi was an Italian,—came to this country from
Italy in June, 1906, and entered the employ of the de-
fendant.   He left surviving him a widow and two children
in Italy.   It is urged that the statute (sections 10427 and
10428, 3 Comp. Laws) does not permit recovery of damages

in behalf of nonresident aliens who are the sole distributees of the deceased's estate. The authorities upon this subject are in conflict. The principal cases denying the right of action are *Deni* v. *Railroad Co.*, 181 Pa. 525, and *McMillan* v. *Lumber Co.*, 115 Wis. 332 (60 L. R. A. 589). Opposed to the holding in these cases are *Mulhall* v. *Fallon*, 176 Mass. 266 (54 L. R. A. 934); *Kellyville Coal Co.* v. *Petraytis*, 195 Ill. 215; *Szymanski* v. *Blumenthal*, 3 Penn. (Del.) 558; *Renlund* v. *Mining Co.*, 89 Minn. 41; *Bonthron* v. *Fuel Co.*, 8 Ariz. 129 (61 L. R. A. 563); *Romano* v. *Pipe Co.*, 125 Iowa, 591 (68 L. R. A. 132); *Cleveland, etc., R. Co.* v. *Osgood*, 36 Ind. App. 34; *Pocahontas Collieries Co.* v. *Rukas*, 104 Va. 278; *Alfson* v. *Bush Co.*, 182 N. Y. 393; *Pittsburgh, etc., R. Co.* v. *Naylor*, 73 Ohio St. 115 (3 L. R. A. [N. S.] 473); *Trotta's Adm'r* v. *Johnson, Briggs & Pitts*, 28 Ky. Law Rep. 851; *Atchison, etc., R. Co.* v. *Fajardo*, 74 Kan. 314 (6 L. R. A. [N. S.] 681); *Patek* v. *Refining Co.*, 154 Fed. 190.

The arguments for and against the remedy are ably presented in the opinions in the cases above cited.

Section 10427 provides a liability upon the death of the person injured. No such liability existed at the common law. Section 10428 provides for bringing the suit and a distribution of the amount recovered "to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate." This language is broad and comprehensive. It includes the widow and children of the deceased. It makes no exception on the ground of residence or citizenship.

In the recent case of *Alfson* v. *Bush Co.*, supra, decided in 1905, the court attaches considerable importance to the fact that for a century emigrants have come to this country, and that they were poor and unable to bring their families with them. The court uses the following language:

"The statute not only benefits the survivors, but protects the laboring man, as it tends to enforce observance, by the employer, of the rule requiring him to furnish his servant a safe place in which to work. The laborer, leaving wife and children behind him and coming here from abroad, has a right to enter into the contract of employment, fully relying upon the statute. The conflict of authority in England and our sister States leads us to deal with this question on principle and to base our answer to it on reasons that are weighty and controlling."

Some of the decisions point out a distinction between the different statutes upon which the decisions are based. Thus the supreme court of Wisconsin, in *McMillan* v. *Lumber Co.*, supra, points out a distinction between the statute of Massachusetts and that of Wisconsin.

It is said in *Deni* v. *Railroad Co.*, supra:

"No case has been brought to our notice in which an English court has held that a nonresident alien is entitled to the benefits conferred by the act of 1846."

A recent case in England, reviewing many authorities, is in point. *Davidsson* v. *Hill*, 2 K. B. Div. (1901) 606. The court in that case points out that some of the decisions of the English courts, denying the right of action, are based upon statutes relating to matters "of a special and exceptional kind." Under a statute the language of which is no broader or more comprehensive than our own, the court in that case held that parliament intended to confer the benefit of the legislation upon foreigners as well as upon British subjects. I have not taken the time to compare and examine the statutes involved in these various decisions with our own. I have compared a few, and where the language is as broad and comprehensive as that in our own statute, the clear weight of authority is in favor of sustaining the right of action.

We are in accord with those decisions holding that the statute gives the right of action for the benefit of aliens, and therefore affirm the judgment.

BLAIR, MOORE, CARPENTER, and McALVAY, JJ., concurred.